UNITED STATED DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
SEP 30 2009

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| MICHAEL PAUL MASUR, and DEBORA KAE MASUR, | * * * * | Bankruptcy Case #07-40213 CIV-07-04167 |
| Appellants, | * * | |
| -vs- | * * | APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE |
| HABBO G. FOKKENA, United States Trustee, | * * * | DISTRICT OF SOUTH DAKOTA SOUTHERN DIVISION |
| Appellee. | * * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Pending before the Court is an appeal by Appellants, Michael Paul and Debora Kae Masur, of the bankruptcy court's decision to dismiss the Masurs' bankruptcy case under 11 U.S.C. § 707(b)(1) based on § 707(b)(2)'s presumption of abuse. The Court affirms in part and reverses in part.

## BACKGROUND

**Statutory Framework**

Section 707(b)(1) of the Bankruptcy Abuse Prevention & Consumer Protection Act ("BAPCPA") provides that a court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter." Under the terms of the statute, the Court must presume that abuse exists if the debtor's disposable income exceeds a specified amount. § 707(b)(2). In calculating disposable income, a court must apply what has been commonly dubbed a "means test" and subtract from the debtor's current monthly income, certain expenses specified under § 707(b)(2)(A)(ii), (iii), and (iv). If this amount is greater than or equal to $182.50 per month (or $10,950 over 60 months),

the presumption of abuse arises. § 707(b)(2)(A)(i), (2).

If the presumption of abuse arises under the means test, the debtor may attempt to rebut the presumption by demonstrating special circumstances that justify income or expense adjustment for which there is no reasonable alternative. § 707(b)(2)(B). If the presumption does not arise or is rebutted, a United States Trustee may move for the court to consider whether bad faith or the totality of the circumstances of the debtor's financial situation demonstrates abuse under § 707(b)(3).

**Claimed Expense Deductions**

The Masurs filed a chapter 7 bankruptcy petition on April 25, 2007. As part of their petition, the Masurs were required to file a Statement of Current Monthly Income and Means Test Calculation, Official Form 22A ("Form 22A"). 11 U.S.C. §§ 521, 707(b)(2)(C). Form 22A calculates monthly disposable income following the means test formula set forth in section 707(b)(2), and thus serves as the basis for determining whether a presumption of abuse arises.

On their Form 22A, the Masurs claimed both ownership and operating expenses for two vehicles that they operated: a 1995 Mitsubishi Gallant which they owned free and clear of any debt, and a 1987 Ford pickup truck they borrowed from a friend. The Masurs also claimed monthly ownership expenses and future payments to secured creditors relating to a 1996 Jeep Grand Cherokee which was titled in the Masurs' name, but was repossessed by the secured lender prior to the time the Masurs filed for bankruptcy. On June 22, 2007, the secured lender on the repossessed third vehicle informed the Masurs in writing that it intended to sell the Jeep.

The Masurs also claimed deductions on their Form 22A for the average monthly mortgage payments due on a house they owned in Sioux Falls, South Dakota. Included in these deductions were mortgage payments and property taxes that they had failed to pay for the seven months preceding their bankruptcy filing. On April 25, 2007, the day the Masurs filed their bankruptcy petition, they also filed a Statement of Intent memorializing their intent to surrender ownership of the property to the secured creditor. Then on June 12, 2007, Citifinancial, the holder of a first mortgage on the Masurs' residence, filed a motion for relief from stay to foreclose the property. The Masurs did not oppose the motion, and the bankruptcy court granted the bank relief from the automatic stay by entry of an order dates June 26, 2007.

Before the Masurs filed for bankruptcy, Mr. Masur borrowed money from his 401K account.

To ensure repayment of the loan, Mr. Masur granted the 401(k) plan a lien against his vested account balance. On their Form 22A, the Masurs claimed Mr. Masur's average monthly 401(k) loan repayments as future payments on secured debts.

**United States Trustee's Motion to Dismiss**

As required by § 704(b)(1), the United States Trustee reviewed all materials filed by the Masurs, and determined that § 707(b)(2) did not entitle the Masurs to claim a number of expense deductions listed on their Form 22A, including vehicle ownership expenses, mortgage payments and arrearages for the house they intended to surrender, and Mr. Masur's 401(k) loan repayments. Accordingly, the United States Trustee recalculated the Masurs' monthly disposable income by eliminating these expenses and calculated that the Masurs had monthly disposable income of $1,189.42 they could use to pay creditors. Since this amount exceeded $182.50, the United States Trustee concluded that the presumption of abuse arose, and filed a statement required by section 704(b)(1) to that effect. On June 22, 2007, the United States Trustee filed a motion to dismiss the Masurs' bankruptcy case pursuant to § 707(b)(1), based on the presumption of abuse under § 707(b)(2) and, alternatively, the totality of the circumstances of the Masurs' financial situation under § 707(b)(3)(B).

After considering the motion on stipulated facts, the bankruptcy court found that the Masurs had monthly disposable income of $1,047.54, and entered an order dismissing the case. In calculating disposable income, the bankruptcy court ruled that the Masurs were not entitled to claim the transportation ownership expense for either of the two vehicles in their possession, or for the repossessed Jeep. The bankruptcy court also ruled that the Masurs could not deduct, as future payments to secured creditors, monthly payments for their surrendered home, their repossessed Jeep, or for Mr. Masur's 401(k) loan repayments. Because the bankruptcy court granted the United States Trustee's motion under § 707(b)(2) based on the presumption of abuse, it did not address the United States Trustee's alternative basis for dismissal based on the totality of the circumstances of the Masur's financial situation under § 707(b)(3)(B).

**Appeal**

On appeal, the Masurs contest the bankruptcy court's decision to exclude some of the expenses described above in calculating disposable income under the means test. The Court will review the bankruptcy court's decision as it relates to each contested expense deduction.

## LEGAL STANDARD

The Court will review the bankruptcy court's findings of fact for *clear error* and its legal conclusions and conclusions involving mixed questions of fact and law *de novo*. *DeBold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006) (citation omitted). The Statement of Facts are uncontested and thus no review thereof is sought by the parties. Therefore, the primary question before the Court, whether the bankruptcy court erred in dismissing the Masurs' bankruptcy case under § 707(b)(1) based on section 707(b)(2)'s presumption of abuse, is a question of law subject to *de novo* review.

## DISCUSSION

I.     **Transportation Ownership and Operating Costs**

The Masurs appeal the bankruptcy court's decision which holds, in part, that they may not deduct ownership expenses on their Form 22A for a 1995 Mitsubishi Gallant that the Masurs owned free and clear or for the 1996 Jeep Grand Cherokee they surrendered to the secured creditor prior to filing their petition.

In calculating a debtor's disposable income under the means test, a debtor may subtract from current monthly income, among other things, "the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides...." 707(b)(2)(A)(ii)(I) (emphasis added). The Local Standards issued by the IRS apportion transportation expenses into two components. *See* IRS Collection Financial Standards ("IRS Standards"), *available at* http://www.irs.gov/individuals/article/0,,id=96543,00.html (last visited Aug.19, 2008). The first component includes costs associated with financing vehicle acquisition, *i.e.*, the vehicle ownership

4

costs. *Id.* The second component includes costs associated with the operation of a vehicle. *Id.*

On appeal, the Masurs argue that the bankruptcy court should have permitted them to claim both ownership and operating expenses on their Form 22A for a 1995 Mitsubishi Gallant that they owned free and clear of any debt. Instead, the court only allowed them to claim the operating expenses for this vehicle, plus an additional $200.00 because the vehicle was more than 6 years old at the time of their petition. *See* Internal Revenue Manual ("IRS Manual") 5.8.5.5.2(3), *available at* http://www.irs.gov/irm/part5/ch08s05.html (last visited Aug. 20, 2008) ("[I]n situations where the taxpayer owns a vehicle that is currently over six years old...an additional operating expenses of $200 will generally be allowed...after the loan/lease has been 'retired.'"). Additionally, the Masurs claim that they should be allowed to deduct ownership expenses for the 1996 Jeep Grand Cherokee which they surrendered to the secured creditor prior to filing their petition.

Whether or not a debtor is permitted under the means test to claim ownership expenses for a vehicle even when he has no actual ownership payments for the vehicle is the subject of many divergent opinions. *See In re Grunert*, 353 B.R. 591, 592-93 (Bankr. E.D. Wis. 2006) (collecting cases on both sides of the issue); *see also* David W. Allard & Katherine R. Catanese, *The Means Test, Part II: Deductions, More Ambiguity in the New Era of Means Testing*, Am. Bankr. Inst. J., 14, 62-63 (Mar. 2007) (describing the issue as "[p]erhaps the most highly litigated issue with regard to a debtor's mean test deductions" and notes that [[t]he volume of published and unpublished opinions that are in direct contradiction to each other is staggering, and a resolution does not seem to be imminent.").

The source of contention regards what Congress intended the phrase "applicable...amounts specified under the...Local Standards" to mean when determining the expenses that should be deducted from a debtor's current monthly income in computing one's disposable income under § 707(b)(2)(A)(i). The National and Local Standards, to which section 707(b)(2)(A)(ii)(I) refers, are used by the Internal Revenue Service ("IRS") to determine a taxpayer's ability to pay a delinquent tax liability. See IRS Standards and IRS Manual, *supra*. To help IRS field agents determine what portion of the taxpayer's income should be available for repayment of delinquent taxes, the IRS has published instructions in two different sources, the IRS Standards and Manual. *Id.*

The U.S. Trustee contends that it is appropriate for the court to use these IRS-published sources to determine the "applicable" expenses under the Local Standards which the Masurs may

deduct on their Form 22A. "Had Congress intended to indiscriminately allow all expense amounts specified in the National and Local Standards," the U.S. Trustee argues, "it would have written 707(b)(A)(ii)(I) [without using the word 'applicable.']" *In re Ross-Tousey*, 368 B.R. 762, 765 (E.D. Wis. 2007). Because the IRS Standards and Handbook make clear that the Local Standards are to serve as a cap on actual expenses incurred rather than as the actual deduction,[1] the U.S. Trustee argues that the Masurs may not claim any ownership expense for the 1995 Mitsubishi Gallant or the 1996 Jeep Grand Cherokee because they incur no actual ownership expenses on that vehicle.

The Masurs argue, however, that if a debtor owns one or more vehicles, the amount specified under the Local Standards for that debtor's locality is "applicable," and may be claimed as a deduction.

The Court finds that it is bound by the Eighth Circuit's decision in *In re Washburn*, Nos. 08-2023, 08-2024, 2009 WL 2634333 (8th Cir. 2009) to find in favor of the Masurs as to this issue. In *In re Washburn*, the Eighth Circuit examined the statutory text, legislative intent and history, as well as relevant policy considerations and concluded that the Bankruptcy Code permits a debtor, in calculating disposable income under the means test, to deduct IRS-designated expense amounts listed under the Local Standards as applicable in a given geographic region for a debtor's number of vehicles even though the debtor may not be incurring actual ownership expenses on those vehicles. *Id.* at *3-6. *In re Washburn* is a Chapter 13 case, but the holding is still applicable to the present Chapter 7 case. The Court is therefore obligated under *In re Washburn* to reverse the bankruptcy court's holding disallowing the Masurs to deduct $471.00 in ownership expenses on their Form 22A for the 1995 Mitsubishi Gallant which they own free and clear and $332.00 in ownership expenses for the 1996 Jeep Grand Cherokee that they surrendered to the secured creditor prior to filing their bankruptcy petition.

---

[1] The IRS Standards provide: "If a taxpayer has no car payment, or no car, only the operating costs portion of the transportation standard is used to come up with the allowable transportation expense." *See* IRS Standards, *supra*. Similarly, the IRS Manual § 5.15.1.7(4.B) states: "If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense." *See* IRS Manual, http://www.irs.gov/irm/part5/ch15s01.html (last visited Aug. 19, 2008).

6

## II. Secured Debts

The Masurs contest on appeal the bankruptcy court's decision that they may not deduct the past-due mortgage or property taxes or future mortgage payments as scheduled payments on secured debt under § 707(b)(2)(A)(iii) because they filed an intent to surrender their property to the secured creditor. Additionally, the Masurs contend that they should be allowed to deduct payments on a 1996 Jeep Grand Cherokee that was repossessed by the secured lender prior to the time they filed for bankruptcy because their contractual liability for the debt remains outstanding until the debt has been discharged.

In calculating disposable income under the means test, in addition to deducting applicable expenses under the Local and National Standards, debtors may deduct certain payments to secured creditors. § 707(b)(2)(A)(i), (iii). Specifically, debtors may deduct:

> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

Not surprisingly, courts are divided on whether payments on a mortgage secured by a home which debtors intend to surrender are payments on secured debt which are "scheduled as contractually due" under the terms of the statute. "Scheduled" is not a statutorily-defined term and the source that courts use to define this term dictates their determination of this issue. *See In re Ray*, 362 B.R. 680, 683 (Bankr. D.S.C. 2007) (stating that the courts that have addressed the issue are split and in making their determination have focused on one phrase of the statute, "amounts scheduled as contractually due.").

Some courts find that the term "scheduled" has its ordinary dictionary meaning and thus conclude that payments on a secured debt are still scheduled at the time of the petition since a debtor remains liable on the outstanding debt until it has been discharged. *See, e.g., In re Sorrell*, 359 B.R. 167, 185 (Bankr. S.D. Ohio 2007); *In re Nockerts*, 357 B.R. 497, 502-03 (Bankr. E.D. Wis. 2006); *In re Randle*, 2007 WL 2668727, at *7 (N.D. Ill. July 20, 2007) (citation omitted); *In re Walker*, 2006 WL 1314125, at *4 (Bankr. N.D. Ga. May 1, 2006). These courts conclude that construing

the means test to represent a "snapshot"of a debtor's financial position as of the petition date, is consistent with Congress's intent to create in 707(b)(2) a standardized and mechanical test to determine solely whether abuse should be presumed.

Other courts have held that the term "scheduled" as it is used in section 707(b)(2)(A)(iii)(I), has a bankruptcy-specific meaning which refers to how the debt is listed in a debtor's schedules and statements. *See, e.g., In re Ray*, 362 B.R. at 685; *In re Skaggs*, 349 B.R. 594, 599 (Bankr. E.D. Mo. 2006); *In re Harris*, 353 B.R. 304, 309 (Bankr. E.D. Okla. 2006). Thus, under this view, if the debtor has indicated an intent to surrender the debt on his Statement of Intention, then the debt is not "scheduled as contractually due," and debtors may not deduct the payments on that debt on their Forms 22A. Proponents of this position assert that this approach better effectuates the BAPCPA's goals of ensuring that those debtors who can pay their debts do so.

Overall, the Court finds that the text of the bankruptcy statute as a whole and its legislative history, indicates that Congress likely intended to permit debtors to expense under the means test all secured payments contractually due on the petition date and not just those expenses that are or should be represented in a debtor's bankruptcy schedule. *See* Federal Rule of Bankruptcy Procedure 1007(b) (stating that debtors have "a duty to amend their schedules and statements to keep the information in them current.").

There is no doubt that on the date of Masur's petition, they remained contractually liable to repay the secured debt on both their mortgage and repossessed Jeep, despite any future intentions they may have had. Even the court in *In re Singletary*, which held that debtors may deduct only those payments that appear on their bankruptcy schedules, agreed that a debtor's contractual liability may not be eliminated upon the surrender of the collateral, but is eliminated, at the earliest, by an entry of discharge. *In re Singletary*, 354 B.R. 455, 468 (S.D. Tex. 2006) (citing *In re Walker*, 2006 WL 1314125, at *4).

The point on which the Court disagrees with the court's decision in *In re Singletary* is how to define the term "scheduled as," as it is used in the statute. In *In re Singletary*, the court concluded that the "meaning of 'scheduled' in the context of § 707(b)(2)(A)(iii) is whether the debt *should* appear on the Debtors' schedules as a secured claim on the date that the Presumption of Abuse of Motion was filed." *Id.* at 467.

After examining the text of the Bankruptcy Code as the court did in *In re Nockerts*, the Court

does not agree that Congress intended to adopt a bankruptcy-specific meaning when it used the phrase "scheduled as" in § 707(b)(2)(A)(iii). 357 B.R. 497. When describing the bankruptcy schedules throughout the Code, "Congress included in the statute a reference to the schedules, either directly by name or indirectly by reference to § 521, the provision that requires the debtor to file bankruptcy schedules." *Id.* at 502; *see also Fokkena*, 373 B.R. at 654. For example, the only time Congress used the phrase "scheduled as" in the Code, it intended to employ the bankruptcy-specific meaning of the phrase because it specifically references schedules filed under section 521(a). *See* 11 U.S.C. § 1111(a) ("A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that *appears in the schedules* filed under section 521(a) or 1106(a)(2) of this title, except a claim or interest that is *scheduled as* disputed, contingent, or unliquidated."); *see also In re Nockerts*, 357 B.R. at 502; *Fokkena*, 373 B.R. at 654. "Broadening the review to include the Bankruptcy Code's references to a claim or debt being "scheduled," the court in *In re Nockerts* found that it:

> turns up two provisions that obviously mean "listed on the bankruptcy schedules;" § 523(a)(3) (referencing discharge of a debt that is "neither listed nor scheduled under section 521(1)"); and § 554(c) (deeming abandonment of property as that "scheduled under section 521(1)"), and two provisions that obviously do not: 524(k)(3)(H)(ii) (suggested reaffirmation agreement language "describing the repayment schedule with the number, amount, and due dates or period of payments scheduled to repay the debts reaffirmed to the extent then known by the disclosing party"); and § 1326(a)(1)(B) (debtor shall make pre-confirmation payments "scheduled in a lease of personal property directly to the lessor").

*In re Nockerts*, 357 B.R. at 502.

In sum, the Court holds that "when Congress uses the terms "scheduled" or "schedule" and explicitly referred to bankruptcy schedules through reference to 11 U.S.C. 521(a)(1), the term of art meaning applied, but when Congress uses the terms "scheduled" or "schedule" without explicitly referring to bankruptcy schedules, the statute clearly intended "schedule" to have its ordinary meaning. *Fokkena* (citing *In re Randle*, 2007 WL 2668727, at *6). Because such an explicit reference to the bankruptcy schedules is absent in § 702(b)(2)(A)(iii), the Court concludes that Congress intended the phrase "scheduled as" to have its ordinary meaning. Accordingly, at the time of the Masur's petition, payments on their home and Jeep remained contractually due regardless of

their future intentions.[2] The Court therefore reverses the bankruptcy court's decision to deduct from the total allowable deductions, $115.37 for the 1996 Jeep Grand Cherokee, $1,503.74 on the first mortgage, $367.84 on the second mortgage, and $287.39 for past-due mortgage payments.

## III. Loan Payments on 401K Plan

Before the Masurs filed for bankruptcy, Mr. Masur borrowed money from his 401K account. To ensure repayment of the loan, Mr. Masur granted the 401(k) plan a lien against his vested account balance.

On appeal, the Masurs claim that the bankruptcy court should have permitted them to deduct Mr. Masur's average monthly 401(k) loan repayments as future payments on secured debts. Although the Masurs concede that there is a general consensus that loans from qualified retirement plans are not secured debts, they state that these decisions are not binding upon this court and argue that the reasoning adopted by the courts in *In re Otero*, No. 06-30691 (Bankr. W.D. Tex. filed Nov. 2, 2006), and the now-reversed case of *In re Thompson*, 350 B.R. 770 (Bankr. N.D. Ohio 2006), *rev'd sub nom, Eisen v. Thompson*, 370 B.R. 762 (N.D. Ohio 2007), are more persuasive. This Court disagrees.

Instead, the Court opts to join with all the other courts which have considered the issue of pension-account loan repayments and concludes "that funds borrowed from a debtor's plan do not constitute debt because the pension plan has no right of repayment against the debtor or the debtor's property which can be classified as a secured claim under the bankruptcy laws." *In re Jones*, 335 B.R. 203, 209 (Bankr. M.D. Fla. 2005) (citing *In re Keating*, 298 B.R. 104, 110-11 (Bankr. E.D. Mich. 2003)); *see also, New York City Employees' Retirement Sys. v. Villarie*, 648 F.2d 810, 812 (2d Cir. 1981); *In re Esquivel*, 239 B.R. 146, 154 (Bankr. E.D. Mich. 1999); *In re Fulton*, 211 B.R. 247, 264 (Bankr. S.D. Ohio 1997) (citations omitted); *In re Jones*, 138 B.R. 536, 538 (Bankr. S.D.

---

[2] The Court notes that the home was in foreclosure. While a foreclosure sale may, in some states, operate to extinguish all terms under a mortgage note, including the scheduled monthly payments of principal and interest, *In re Brandenburg*, 2007 WL 1459402, at *2 (Bankr. E.D. Wis. May 15, 2007), the facts in this case do not indicate that a sale had been completed at the time of the Masur's bankruptcy petition.

Ohio 1997); *In re Scott,* 142 B.R. 126, 131-32 (Bankr. E.D. Va. 1992).

Needless to say, the heart of this dispute concerns the proper definition of "secured debt" under the terms of the Code. The Code defines the words "debt" and "claim," but it does not define the term "secured debt." *In re Thompson,* 350 B.R. at 774. "Debt" is defined as "liability on a claim," 11 U.S.C. § 101(12), and "claim" is defined as "right to payment," 11 U.S.C. § 101(5). While the words "debt" and "claim" are defined under different provisions of the statute, courts have long held that the words are coextenstive under the Code. *Johnson v. Home State Bank,* 501 U.S. 78, 84-85 n.3, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991).

Because the administrator has no claim for repayment against the debtor or the estate, the Court finds that the 401(k) plan loan is not a "debt" under the Code. *Thompson,* 370 B.R. at 768. When a plan participant borrows money from his retirement account, the plan administrator does not loan the participant the administrator's money. *In re Fulton,* 211 B.R. at 264. Rather, the debtor is, in essence, borrowing from himself. *Id.* The administrator deducts the requested loan amount from the participant's account and credits loan payments and interest back to the account. *Thompson,* 370 B.R. at 768 n.10. Pension plan administrators have no right to sue any of the debtors for the outstanding balances on the loans or to collect interest, attorneys fees or other administrative costs associated with their efforts to foreclose on the defaulted notes. *In re Fulton,* 211 B.R. at 264 (footnote omitted). If the participant defaults on the loan, the administrator deducts the amount owed from the vested account balance, and repays the loan with this deduction. *Thompson,* 370 B.R. at 768 n.10. Accordingly, the Court finds that Mr. Masur's 401(k) plan loan is not a "debt" under the Code.

Additionally, because the words "debt" and "claim" are deemed coextensive, the court finds that "secured claims," which the Code specifically defines, are likewise coextensive to "secured debts." Section 506(a)(1) of the Bankruptcy Code defines secured claims as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property....
> 11 U.S.C. § 506(a)(1).

Because Mr. Masur's interest in his 401(k) retirement plan is not pro perty of the Masur's estate, the Court concludes that the account is not a "secured debt" under the definition of section

506(a)(1). *See Thompson*, 370 B.R. at 770 (stating that it is "undisputed that a bankruptcy estate has no interest in retirement accounts, which are expressly exempted under 522(n).").

For the foregoing reasons, the Court affirms the bankruptcy court's decision which held that the Masurs may not deduct the $443.52 in loan payments on Mr. Masur's 401(k) plan in computing disposable income under the means test.

## CONCLUSION

|  | Bankruptcy court calculations | Revised calculations |
|---|---|---|
| **Current monthly income** | $5,910.51 | $5,910.51 |
| Total claimed deductions | $7,355.83 | $7,355.83 |
| less ownership expense for Mitsubishi | $471.00 | |
| less ownership expense for Jeep | $332.00 | |
| plus added operation expense for Mitsubishi | $200.00 | $200.00 |
| less payment on Jeep Cherokee | $115.37 | |
| less payment on first mortgage | $1,503.74 | |
| less payment on second mortgage | $367.84 | |
| less cure payments on home | $287.39 | |
| plus housing and utilities expense | $828.00 | $828.00 |
| less payment on 401(k) loans | $443.52 | $443.52 |
| **Total allowed deductions** | $4,862.97 | $7,940.31 |
| **Monthly disposable income** | $1,047.54 | -$2,029.80 |

The bankruptcy court's holding that the Masurs may not deduct ownership expenses or loan payments on a 401(k) plan in computing disposable income under 11 U.S.C. 707(b)(1)(2)(A)(I) is hereby AFFIRMED. However, the bankruptcy court's holding that the Masurs may not deduct $471.00 in ownership expenses on their Form 22A for the 1995 Mitsubishi Gallant which they own free and clear and $332.00 in ownership expenses for the 1996 Jeep Grand Cherokee that they surrendered to the secured creditor prior to filing their bankruptcy petition is REVERSED. Additionally, the Court REVERSES the bankruptcy court's holding disallowing the Masurs to deduct future mortgage payments on a home that they intend to surrender and a 1996 Jeep Grand Cherokee that had been repossessed by the secured lender. Accounting for the changes to total allowable deductions, the Court finds that the Masurs have a monthly disposable income of -$2,029.80, and thus a presumption of abuse has not arisen. The Court remands this case to the bankruptcy court to review whether the totality of the circumstances of the Masur's financial

12

situation demonstrates abuse under § 707(b)(3).

Dated this 30th day of September, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
DEPUTY

13